# City of East St. Louis

## v.

## Andrew Lockhead et al.

1. Damages—Proximate and remote cause.—In maintaining and operating works of a public character, such as railroads, etc., it is not necessary, in order that the owner of property adjacent may recover damages, that such property should lie along or front upon the line of such railroad. If the premises are adjacent and lie so near as that a direct physical injury is done them, this is all the rule requires.

2. City—Liability for damages—Works of private corporation. —Where a city gave consent to a bridge company to construct approaches to their bridge along a certain street, the city rendered itself liable only for the necessary, usual and natural consequences of the act, such as it might reasonably foresee would probably result from the license granted.

Appeal from the City Court of East St. Louis; the Hon. Charles T. Ware, Judge, presiding. Opinion filed August, 13, 1880.

Mr. J. M. Freels, for appellant; that where the property has not abutted on the street taken, and is not contiguous and adjacent thereto, no damages can be recovered, cited, Clark v. Saybrook, 21 Conn. 314; Caledonia R'y Co. v. Ogilvie, 2 Macq. 239; Proprietors of Canals v. Nashua, etc. R. R. Co. 10 Cush. 385; Bordentown T. P. Co. v. Camden & Amboy R. R. Co. 17 N. J. L. 314; Castle v. Berkshire, 11 Gray, 26; Smith v. Boston, 7 Cush. 254; Coster v. Mayor of Albany, 43 N. Y. 339; Kennett's Petition, 24 N. H. 139; Jackson v. Jackson, 16 Ohio St. 163; Barr v. City of Oskaloosa, 45 Iowa, 275; *In re.* N. Y. C. R. R. Co. 13 N. Y. 149; Village of Hyde Park v. Dunham, 85 Ill. 570; Stack v. City of East St. Louis, 85 Ill. 377; Mills on Eminent Domain, § 318.

The city can authorize the building of approaches to the bridge without becoming liable for damages to property holders: C. B. & Q. R. R. Co. v. McGinnis, 79 Ill. 269; Chicago v. Rumsey, 87 Ill. 348; Parrot v. C. H. & D. R. R. Co. 10 Ohio

St., 624; Bordentown, etc. Co. v. Camden & Amboy R. R. Co. 17 N. J. L. 314.

An instruction not based on the evidence is erroneous; Frantz v. Rose, 89 Ill. 594; Nichols v. Bradsbey, 78 Ill. 44; Reinback v. Crabtree, 77 Ill. 182; Straus v. Minfesheimer, 78 Ill. 492; Ill. Cent. R. R. Co. v. Cragin, 71 Ill. 177; I. & St. L. R. R. Co. v. Miller, 71 Ill. 463.

Instructions should not mislead: St. L. & S. E. R. R. Co. v. Britz, 72 Ill. 256.

Mr. L. H. HITE, for appellees, cited Stone v. Fairbury, etc., R. R. Co. 68 Ill. 394; Nevins v. Peoria, 41 Ill. 502; City of Pekin v. Brereton, 67 Ill. 477; Stack v. City of East St. Louis, 85 Ill. 377.

As to measure of damages: Chicago & Pacific R. R. Co. v. Francis, 70 Ill. 238; Page v. C. M. & St. P. R. R. Co. 70 Ill. 324; City of Shawneetown v. Mason, 82 Ill. 337.

BAKER, J. In February, 1873, the city of East St. Louis authorized by ordinance the Illinois and St. Louis Bridge Company to construct the eastern approach to its bridge over and along Crook street. Under the license and power thus conferred upon it by said ordinance, the bridge company entered upon the street and erected its bridge approach. The bridge was opened to the public in 1874, and it and the approach has since been used continuously for the passage of railroad trains of all sorts, and vehicles of all descriptions. Livingston was the owner in fee of an undivided one-half of a certain lot and brick hotel building, which is north not only of Crook street, but of Dyke avenue, and fronts on said avenue and on Front street. It is one hundred and eighty feet from the nearest line of this lot to the nearest line of Crook street, and 211½ feet from the line of the lot to the nearest rail of the railroad track. Neither Dyke avenue or Front street is obstructed. The appellees, who are assignees in bankruptcy of Livingston, recovered a judgment in the City Court of East St. Louis against appellant for $1,500 damages. The declaration alleges that clouds of dust, smoke, cinders, and other flying materials

continuously fall and blow from said bridge to and upon said hotel building; that the travel is continuous and disagreeable, and renders the occupancy of the premises uncomfortable and unhealthy, and the same were and still are violently shaken, and the building directly and violently damaged, and the property lessened in value.

Appellant contends, that as the lot and hotel do not front or abut on Crook Street, upon which the approach is constructed, the damages suffered are necessarily so remote, contingent and consequential, that no compensation can be allowed. We do not understand the fronting or abutting of the lot is the test of liability. The law only requires there should be a direct, immediate physical injury. In Stone v. F. P. & N. W. R. R. Co. 68 Ill. 394, it was held that if smoke and cinders were cast and thrown from the engines and locomotives of the company, in and upon the residence of Stone, by means whereof his property was damaged, he was entitled to a recovery. The circumstance in that case—the residence fronted on the street over which the railroad was constructed—was altogether fortuitous, and not at all controlling. If the premises are adjacent, and lie so close or near as that a direct physical injury is done them, this is all the rule requires. We think, however, the verdict and judgment in this case are not supported by the evidence, and that the damages assessed are grossly excessive. That in a proper case the city as well as the bridge company would be responsible for resulting damages, is decided in City of Pekin v. Brereton, 67 Ill. 477, and City of East St. Louis v. Hackett, 85 Ib. 382. But it must be understood that when the appellant city authorized the bridge company to construct this approach, it only rendered itself liable for the necessary, usual and natural consequences of its act, such as it might reasonably foresee would probably result from the license it granted. In the suit against the City of Pekin, the injuries were of this character, and in Hackett's case the averment was the falling of dirt and dust was caused by teams and wagons passing over the bridge approach.

In the case at bar, the testimony of Livingston is that "baskets full of dust are thrown by the employes of the

bridge company from the approach, and much of this dust and dirt is taken by the wind north on to my property; the flying dust fills the houses and windows." The city cannot be held for the injury thus occasioned, as it was not a probable and natural result from the building of the bridge. The city could not have anticipated this willful and reprehensible conduct of the employes of the bridge company, in their disposing of the dirt and dust accumulating on the roadway of the bridge, instead of gathering it up and carting it off. So far as the premises are damnified by dust blown from the roadway of the bridge, appellant is answerable. But the injury thus occasioned is probably insignificant, as the distance is quite considerable, and the evidence shows there is a battened railing four and a half feet high on the outside of the wagon-track, and Phillips, who lived in the house from July, 1872, to to June, 1877, testifies that dust from the bridge never attracted his attention, and he and Mitchell both testify most of the dust on the premises comes from Front street; and, we may add, there is no evidence whatever in the record as to smoke and cinders from the bridge.

The evidence of damage to the premises from the shaking of the building, is still more unsatisfactory. It is true, it appears that heavy teams and coal-wagons over the upper roadway, and heavy coal, freight and cattle trains over the lower roadway, occasion vibrations, which extend to and can be felt in the building; but it does not appear from the testimony, either the walls or plastering of the hotel have been cracked thereby, or other tangible injury done.

The hotel property has greatly depreciated in value since the building of the bridge, possibly from $35,000 or $40,000 to $10,000. As we read the testimony, this has been occasioned almost or quite altogether by the general depreciation in the values of real estate, caused by the business depression all over the country, and by the fact that before the building of the bridge, this hotel was directly in the line of travel, and in the immediate neighborhood of a large transfer business, which travel and business have now availed themselves of the superior facilities for communication with St. Louis, afforded by this

great bridge. It is plain, depreciation in value thus occasioned cannot be considered in awarding damages.

We are of opinion the points made by appellant in its motion for a new trial, that the verdict was not warranted by the law and the evidence, and that the damages were excessive, should have been allowed, and that the Court erred in overruling that motion, and in rendering judgment on the verdict.

The judgment is reversed, and the cause remanded.

Reversed and remanded.