Marshall v. City of Chicago.

## Thomas Marshall v. City of Chicago.

1. PRIVATE PROPERTY — *Taken for Public Use.*—Private property may be damaged by the exercise of the police power, and yet, in the absence of a constitutional or statutory provision for compensation, there can be no recovery for such damage.

2. SAME—*Rule Under the Constitution of 1870.*—Under Section 13 of Article 2 of the present Constitution a recovery may be had in all cases where private property has sustained a substantial damage by the making and using of a public improvement.

**Trespass on the Case,** for damage to private property for public use. Trial in the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Judgment for defendant on demurrer to declaration. Appeal by plaintiff. Heard in this court at the March term, 1898. Reversed and remanded. Opinion filed July 21, 1898.

JOHNSON & McDANNOLD, attorneys for plaintiff.

Wherever private property has sustained a substantial damage by the making and using an improvement that is public in its character, damages need not be physical. C. & W. I. Ry. Co. v. Ayers, 106 Ill. 518; L. E. & W. Ry. Co. v. Scott, 132 Id. 435.

Adjacent lot owners may recover damage occasioned by the building and maintaining of a railroad in the streets of a city, by and with the consent of the municipal authority. Penn M. L. Ins. Co. v. Heiss, 141 Ill. 61.

This is well settled under the Constitution and laws of this State in a late action to recover compensation for the damage done to property by changing grades. City of Joilet v. Blower, 155 Ill. 416.

Damages ensuing by reason of the construction and operation of a railroad along and upon a street, which impairs the right and enjoyment of adjacent property, may be compensated for, and recovered in an action on the case by the owner. Galt v. C. & N. W. Ry. Co., 157 Ill. 130.

Unreasonable use of highways gives adjoining owner action for damages. Fritz v. Hobson, L. R., 14 Chan. Div. 552.

Probable profits may be recovered. Ripley v. G. N. Ry. Co., L. R., 10 Ch. App. 435; Cripps on Compensation (2d Ed.), 95; Lloyd on Compensation (3d Ed.), 67–114; Wolf and Middleton on Compensation (1st Ed.), 117; Mayor of Montreal v. Brown, 2 App. Cas. 168.

Damages to good will may be recovered. White v. Commissioner of Public Works, 22 N. T. L. S. (1870).

Loss of trade is loss of good will. The loss of trade is injury to the value of the land itself. Senior v. Met. R. W. Co., 2 H. & C. 265 (1863).

Damage to interest in land necessarily includes damage to the business interest, by diverting it from its accustomed channels. Cameron v. Charing Cross R. W. Co., 16 C. B. N. S. 430.

· Loss of business, in addition to the market value of the land, may be recovered in condemnation cases. Covington Str. Co. v. Piel, 87 Ky. 276; Borough of Norwalk v. Blanchard, 56 Conn. 461; Patterson v. Boston, 20 Pick. 165.

Depreciation in value of a leasehold is recoverable. Getz v. P. & R. R. Co., 105 Penn. St. 547; S. C., 113 Penn. St. 214; R. R. Co. v. Eby, 107 Penn. St. 173; Schuylkill Riv. R. Co. v. Kersey, 133 Penn. St. 234; W. P. R. R. Co. v. Hill, 56 Penn. St. 465.

Damages for interruption of business are allowed.    Allison v. Chandler, 11 Mich. 549; G. R. & I. R. R. Co. v. Weiden, 70 Mich. 395; C., S. F. & C. Ry. Co. v. McGrew, 104 Mo. 282; Hannibal Bridge Co. v. Schaubacher, 57 Mo. 588.

CHARLES S. THORNTON, corporation counsel, and THOMAS J. SUTHERLAND, attorneys for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.
. This is an appeal from a judgment rendered in an action on the case by plaintiff in error against defendant in error.
˙ The declaration avers that plaintiff, by written indenture of lease, of date October 7, 1892, became the lessee from November 1, 1892, until April 30, 1894, of a certain lot in the city of Chicago, at a rental of $990, to be paid to the lessor in monthly installments of $55 in advance, which lease was, October 11, 1893, by written agreement of that date, extended from April 30, 1894, to April 30, 1895; that plaintiff was in possession of and occupying the east 32 feet of the lot; that the lot has a frontage of 32 feet on east Twenty-second street and extends of that width north 25 feet, and that the east line of said premises adjoins the west line of the right of way of the Chicago, Rock Island and Pacific and Lake Shore and Michigan Southern Railroad Companies, the railways of which companies crossed Twenty-second street immediately contiguous to plaintiff's premises, at the same level and grade as the surface of the plaintiff's premises; that Twenty-second street was a much-traveled street and furnished the only means of ingress and egress to and from plaintiff's premises, which means of ingress and egress were of great value to said premises; and by reason of the circumstances aforesaid and the proximity to the premises of said railroads, said premises and leasehold were of the value of, to wit, $5,000, and also, by reason of the circumstances aforesaid, plaintiff, who was engaged in the retail liquor and saloon business, on said premises, had a large and profitable business, etc.   The declaration then sets out in full an ordinance of great length, passed by the city

council of defendant July 9, 1894, which requires the above named railway companies to elevate their railway tracks above Twenty-second and other streets, and among other things, provides for the construction of a subway at the intersection of the railway right of way with Twenty-second street and in Twenty-second street, and plaintiff avers that the railway companies, in pursuance of said ordinance, to wit, October 10, 1894, excavated and lowered the grade of Twenty-second street three feet and eight inches in front of his said premises, and that said street has ever since been maintained in said lowered condition, and that the said lowering of the grade has greatly interfered with the access to and egress from the plaintiff's premises, and has obstructed and impeded travel along Twenty-second street, by means whereof plaintiff's business and the profits thereof have greatly decreased and the market value of his said leasehold was greatly depreciated, to wit, $5,000, etc.

The defendant demurred generally to the declaration, thus merely raising the question of law whether the declaration states a cause of action. The court sustained the demurrer, and gave judgment against the plaintiff for costs.

Defendant's counsel have filed an elaborate argument in support of the judgment, which we have carefully considered. The argument may be briefly summarized as follows:

The ordinance of July 9, 1894, requiring the railroad companies to elevate their tracks, construct sub-ways, etc., was passed in the exercise of the police power. The provision of Section 13, Art. 2 of the Constitution, namely, "Private property shall not be taken or damaged for public use without just compensation," must be construed with reference to the police power. So construing it, there can be no recovery on the facts stated in the declaration.

Counsel admit in their argument that the railroad companies were, by the ordinance, required to elevate their tracks for the protection of the public in passing along the streets of the city; that the crossing the streets at grade was a menace to life and property; in other words, that the improvement was ordered for the convenience and safety of

Marshall v. City of Chicago.

the public, for public use.   The demurrer admits all the material allegations of the declaration, which are well pleaded, among which is the allegation that the plaintiff's premises were depreciated in value—damaged—by the work ordered. It stands admitted, therefore, that the plaintiff's property was damaged for public use, and to hold that in such case there can be no recovery, would be to nullify the constitutional provision cited.   It is undoubtedly the law, sustained by numerous decisions, many of which have been cited by defendant's counsel, that private property may be damaged by the exercise of the police power, and yet in the absence of a constitutional or statutory provision for compensation, there can be no recovery for such damage; but no case has been cited, nor do we believe any can be found in which, there being a provision for compensation for damage occasioned to private property for public use, it has been held that there could be no recovery for such damage.   The case of C. & N. W. Ry. Co. v. City of Chicago, 140 Ill. 309, relied on so confidently by counsel for the defendant, has no application to such a case as the present.   In that case the city, by ordinance and condemnation proceedings in pursuance thereof, extended a street across the right of way and tracks of the railway company.   The company claimed as damages expenses which it would incur in grading and planking the crossing, maintaining a gate and power house, paying the salary of a gate tender and making repairs. The court say :   " The question is whether, in a case where a city institutes a condemnation proceeding to open or extend a street across a railroad already constructed, the company owning such railroad is entitled to be allowed, as part of its just compensation, the amount of its expenses in constructing and maintaining the street crossing."   This was the question discussed by the court, and the court decided that there could be no recovery for such expenses, holding that railways are public highways of the State, and as such subject to legislative supervision; that the company took its charter subject to the right of the public to extend the public highways and streets across its right of way, and

also subject to the exercise of the police power of the State;
that the statutes in force requiring the construction and
maintenance of crossings were police regulations intended
for the safety of persons and property, and were applicable
to the company, and that the company could not claim
compensation for expenses incurred in complying with such
regulations. The court did not hold that the company
would not be entitled to any compensation in case it
appeared that its right of way would be decreased in value
by the extension of the street across it. On the contrary,
the court said: "So far as the taking of the strip was con-
cerned, the measure of the compensation would be the
amount of the decrease in value of the use for railroad pur-
peses, which should be caused by the use for the purposes of
a street, such use for the purposes of a street being subject
to the use of the companies for raliroad purposes." The
writer of this opinion presided at the trial of the case in
the Circuit Court, and took the same view of the law as
did the Supreme Court on appeal, and there being no com-
petent evidence of what the decrease in value, if any, would
be of the right of way of the company for railroad purposes
by the extension of the street across it, awarded merely
nominal damages.

In Rigney v. City of Chicago, 102 Ill. 64, the facts were
that Rigney owned a lot on Kinzie street in the city, along
which railway tracks were constructed and operated.
Kinzie street runs east and west, and west of Rigney's lot,
about 220 feet, Halsted Street, a north and south street,
intersects and crosses Kinzie street and the railway tracks.
Kinzie and Halsted streets were on the same grade, so that
there was free access from Rigney's premises by the way of
Kinzie street to Halsted and from Halsted to his premises.
The city caused to be constructed on the line of Halsted
street, and across Kinzie street and the railway tracks
thereon, a viaduct or bridge, which cut off the access above
mentioned, by reason of which, Rigney claimed, and the evi-
dence showed, the market value of his property was
decreased. The construction of the viaduct was as much an

exercise of the police power of the city as was the ordering of the elevation of the railway tracks and the construction of the sub-ways in the present case; yet the court held that Rigney was entitled to recover, basing its decision as to the law solely on the constitutional provision requiring compensation to be made when private property is damaged for public use.

The contention of defendant's counsel, if sustained, would operate to make the law now as it was prior to the adoption of the present constitution, namely, that there could be no compensation for private property merely depreciated in value by reason of a public improvement, such as constructing a viaduct across a street, or raising or lowering the grade of a street or highway, without any physical injury to the *corpus* of the property, but only in case of an actual taking or a direct physical injury. But the court in Rigney v. Chicago, *supra*, shows clearly that the very object of inserting the words "or damaged" in Sec. 13, Art. 2 of the Constitution, was to change the organic law and give a remedy to the owner of private property in cases where previously there was none. The Rigney case has been cited in a large number of subsequent cases by the Supreme Court with approval, and the doctrine announced in that case is the established law of the State. In C. W. & I. R. R. Co. v. Ayres, 106 Ill. 511, the court, referring to the Rigney case, say : "The conclusion there reached was, that under this constitutional provision a recovery may be had in all cases where private property has sustained a substantial damage by the making and using a public improvement."

In City of Joliet v. Blower, 155 Ill. 414, which was an action for damages occasioned to the property of the plaintiff by changing the grade of a street, the court say : "It is well settled that, under the constitution and laws of this State, there is a right of action to recover compensation for the damage done to the property of appellees by changing the grade on Exchange street," citing Rigney v. City of Chicago and other cases.

To the same effect is City of Bloomington v. Pollock, 141 Ill. 346; see also City of Pekin v. Brereton et al., 67 Ill.

477, and Stack v. City of East St. Louis, 85 Ib. 377. Notwithstanding the cases cited *supra*, and other similar cases with which defendant's counsel must be presumed to be familiar, we find the following printed in italics in their argument:

" It is asserted that there are some well considered adjudications which oppose the contentions of this brief, but we have not been able to find them; and undoubtedly it will be discovered that in every such supposed case, the application of the principle relied upon here was neither presented, insisted upon, nor considered, and hence the decisions in those cases are not authorities here."

The " principle relied on " by defendant's counsel, and to the discussion of which their entire argument is devoted, is that the improvement having been ordered in the exercise of the police power, there can be no recovery for damage occasioned by it to private property. Counsel assume that this contention was not made in any of the cases decided by the Supreme Court, and also assume that it was not noticed or considered by the court in the Rigney case, and other like cases, that the ordering of the improvement involved was an exercise of the police power. We can not indulge in the latter assumption, but we think it highly probable that it never occurred to the Supreme Court that the police power is of so great potency as to supersede and nullify an express provision in the fundamental law of the State.

The question whether the improvement was ordered in the exercise of the police power, or in the exercise of some other power, is wholly immaterial to the plaintiff's case, because no matter what the power in the exercise of which the ordinance of July 9, 1894, was passed, if the plaintiff's property was damaged as claimed in his declaration, he is entitled to compensation. The declaration avers loss of business and prospective profits. We must not be understood as holding that this is a proper element of damage in such a case as the present. We base our decision solely on the allegations of the declaration to the effect that the plaintiff's leasehold was damaged for public use.

The judgment will be reversed and the cause remanded.